# United States Court of Appeals
## For the First Circuit

No. 21-1460

JOHNSON CONTROLS SECURITY SOLUTIONS, LLC,

Plaintiff, Appellee,

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 103,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lynch, Kayatta, and Barron,
Circuit Judges.

Christopher N. Souris, with whom Richard M. Olszewski and Krakow, Souris & Landry, LLC were on brief, for appellant.
Brian D. Lee, with whom Ogletree, Deakins, Nash, Smoak & Stewart, P.C. was on brief, for appellee.

January 28, 2022

**LYNCH**, **Circuit Judge**. In this dispute between the International Brotherhood of Electrical Workers, Local 103 (the "Union"), and Johnson Controls Security Solutions, LLC over Johnson Controls' compliance with the terms of the parties' collective bargaining agreement (the "CBA"), the district court refused to order arbitration as called for by a clause in the agreement. We reverse.

I.

Johnson Controls is a limited liability company with offices in Massachusetts which sells, installs, and maintains security alarms and provides related services to commercial clients. Its Norwood, Massachusetts facility has entered into a CBA with the Union, a labor organization that represents Johnson Controls employees.[1]

We next describe the pertinent terms of the CBA, which are found in three clauses. Article 5, Section 1 (the "Arbitration Clause") states:

> In the event that an agreement cannot be reached between the Union and the Employer with respect to a grievance involving and

---

[1] Johnson Controls is the successor-in-interest to Tyco Integrated Security, LLC, which was the signatory to the CBA that was in effect during the events giving rise to this dispute. That agreement was effective between October 21, 2017 and September 30, 2020. Johnson Controls and the Union have since executed a new collective bargaining agreement, operative between October 15, 2020 and December 31, 2023, which is in all material respects the same as the predecessor agreement. The parties do not dispute the validity of the CBA.

> limited to the interpretation and application of any specific provision of this Agreement, it may be submitted, by the Union to arbitration, pursuant to the Labor Arbitration Rules of the American Arbitration Association.
>
> Article 5, Section 2 (the "Exclusion Clause"), provides:
>
> Changes in business practices, matters involving capital expenditures, the opening and/or closing of new units/facilities, the choice of personnel (subject to the seniority provisions, if applicable)[,] the choice of materials, service products, processes and equipment, <u>or any dispute which either directly or indirectly involves the interpretation or application of the plans covering pensions, disability benefits and death benefits, shall not be arbitrable</u>.

(emphasis added).

The third relevant clause is Article 9, which states: "The Employer hereby agrees to provide the 401(k) Plan, disability benefits and death benefits as in effect as of May 6, 2008." It is this clause which the Union says Johnson Controls has violated and which gives rise to the dispute the Union seeks to arbitrate.

Around April 2020, Johnson Controls "temporarily reduced its matching contribution to the Company's 401(k) Plan" (the "Plan"). The Union's grievance, which was filed on May 1, 2020, concerns Johnson Controls' reduction in the employer match, "which the Union view[ed] as a violation of Article 9 of [the CBA]."[2]

---

[2] The reduction in the employer match was for one year. Johnson Controls states that it has since restored its contributions, but does not claim to have made up the difference in the reduced benefits.

Following Johnson Controls' denial of the grievance, the Union filed a demand for arbitration on May 19, 2020 with the American Arbitration Association (the "AAA") pursuant to the Arbitration Clause.

The next day, the AAA opened the arbitration case and Johnson Controls sent an email to the Union's counsel, objecting that "per Article 5 Section 2 of the labor agreement th[e grievance] is not arbitrable." On June 8, 2020, Johnson Controls sent an email to the AAA, stating again that "[t]he subject matter of the Union's arbitration request . . . is not arbitrable." The Union disagreed, and an arbitrator was appointed on June 19, 2020. On July 7, 2020, the arbitrator declined to stay the arbitration absent a court order, and scheduled a hearing for February 9, 2021.

On January 14, 2021, Johnson Controls filed the instant lawsuit in the U.S. District Court for the District of Massachusetts pursuant to the Labor Management Relations Act, 29 U.S.C. § 185, seeking a declaratory judgment that the dispute is not arbitrable under the CBA, see also 28 U.S.C. § 2201.[3] On March 15, 2021, the Union moved to dismiss Johnson Controls' court complaint. The parties agreed to treat the motion as one for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

---

[3] The arbitrator stayed the arbitration hearing after being notified of the federal lawsuit.

- 4 -

The district court stated at the end of the May 12, 2021 motion hearing that the Union's dispute was not arbitrable. The court did not enter a written opinion. The court did not address the exact terms of the CBA. On May 17, 2021, the district court entered a declaratory judgment in favor of Johnson Controls. The Union appeals from that judgment.

## II.

Our review of a district court's allowance of a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is de novo. Curran v. Cousins, 509 F.3d 36, 43 (1st Cir. 2007).

Under AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643 (1986), four principles govern the determination of whether a certain labor dispute concerning the collective bargaining agreement is subject to arbitration: (1) that arbitration is a matter of contract and the parties must have agreed in a contract to arbitrate the dispute, id. at 648; (2) that the question of whether a collective bargaining agreement requires the parties to arbitrate a particular grievance is one of law for the court, not the arbitrator, to determine, id. at 649; (3) that, in making this determination, "a court is not to rule on the potential merits of the underlying claims," id. at 649; and, most relevant here, (4) that "where the contract contains an arbitration clause, there is a presumption of arbitrability," id. at 650.

- 5 -

The presumption, in turn, requires a court to permit a grievance to proceed to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  Id. at 650 (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)).  Where, as here, there exists a relatively broad arbitration clause, the presumption can be rebutted only by a specific and "express provision excluding a particular grievance from arbitration" or "the most forceful evidence of a purpose to exclude the claim." Id. at 650 (quoting Warrior & Gulf, 363 U.S. at 585).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)); see also Gateway Coal Co. v. United Mine Workers of Am., 414 U.S. 368, 377 (1974) (noting "[t]he federal policy favoring arbitration of labor disputes"); cf. Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995) ("[D]ue regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor

of arbitration." (quoting Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ., 489 U.S. 468, 476 (1989))).[4]

On de novo review, we cannot say "with positive assurance" that the Union's grievance is not arbitrable. The grievance concerns whether the CBA was violated by Johnson Controls' unilateral reduction of its matching contribution to the company's 401(k) plan. The parties agree that it plainly constitutes "a grievance involving and limited to the interpretation and application of any specific provision of [the CBA]," namely, Article 9.

This takes us to the relevant language of the Exclusion Clause, which expressly excludes from arbitration only disputes that "directly or indirectly" involve the "interpretation or application" of "plans covering pensions, disability benefits and death benefits." These types of plans, which include the 401(k) plan, are governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"), and its statutorily mandated claims procedures. See 29 U.S.C. §§ 1002-03, 1133; 29 C.F.R. § 2560.503-1 (ERISA claims procedures). There is no colorable claim that the Union's grievance "directly" involves the

---

[4] See also Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 298 n.6 (2010) (discussing precedents applying the Federal Arbitration Act in a labor case "because they employ the same rules of arbitrability").

"interpretation" or "application" of the Plan.[5] The question becomes whether the grievance clearly "indirectly" does. Johnson Controls argues for a broad reading of the term "indirectly." It says the term would be rendered meaningless and duplicative of "directly" if the Exclusion Clause did not apply to this grievance. Resolving all doubts in favor of arbitration, we disagree.

As the Union has argued, we cannot say "with positive assurance" that the Arbitration Clause does not apply to its grievance on account of the "indirect" language in the Exclusion Clause. This language, viewed in context, does not "specifically exclude" all disputes broadly having to do with the Plan.[6] See Warrior & Gulf, 363 U.S. at 581. Rather, the language can plausibly be read more narrowly, to exclude disputes other than the grievance at issue here. It is plausible to read the Exclusion Clause as not applicable to this dispute concerning compliance with the CBA's requirements as to the 401(k) plan.

The Union's reading would give meaning to the qualifying terms "interpretation or application" which limit the scope of the Exclusion Clause. See New England Carpenters Cent. Collection

---

[5] The Exclusion Clause also does not expressly exclude grievances concerning the interpretation of Article 9.

[6] Counsel for Johnson Controls does not explain why the parties, if they intended to exclude from arbitration essentially all disputes broadly "having to do with pension plans," did not say as much in the Exclusion Clause.

Agency v. Labonte Drywall Co., 795 F.3d 271, 282 (1st Cir. 2015) ("[E]very word and phrase of an instrument is if possible to be given meaning, and none is to be rejected as surplusage if any other course is rationally possible." (citation omitted)). Its reading is buttressed by the fact that ERISA-governed disputes are subject to separate, statutorily mandated dispute resolution procedures.[7] See 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1; see also Senior v. NSTAR Elec. & Gas Corp., 449 F.3d 206, 220-21 (1st Cir. 2006) (interpreting a CBA against the backdrop of its "broader context"). A dispute over the administration of the Plan's benefits necessarily would involve the "interpretation or application" of the Plan's governing documents. See Diaz v. Seafarers Int'l Union, 13 F.3d 454, 456-59 (1st Cir. 1994) (reviewing trustees' "interpretation" and "application" of ERISA-governed pension plan in dispute over the administration of benefits).

Johnson Controls' position turns on its surplusage argument, which we do not accept. The Union's reading of the

---

[7] Notably, counsel for Johnson Controls conceded at oral argument that there is no way to know what the drafters meant in the Exclusion Clause and whether they intended to exclude only ERISA-governed disputes. Because there is doubt as to what the drafters meant, at least insofar as the word "indirectly" is ambiguous, that doubt must be resolved in favor of arbitration. See Gambino v. Alfonso, 566 F. App'x 9, 12 (1st Cir. 2014) (unpublished) ("[I]f there is any doubt, an arbitration clause [in a CBA] should be interpreted to embrace a particular dispute.").

Exclusion Clause does not leave the term "indirectly" without meaning or render it surplus, as the company argues. The Union's reading gives the term "indirectly" a purpose. Such a purpose is illustrated by this example: An employee and employer resolve a dispute over the employee's termination with a Severance Agreement. That Agreement, among other things, terminates the employee's participation in the pension plan and grants the employee an annuity "of value equal to payments that would have been received under the pension plan." The employee then sues for breach of the Severance Agreement, claiming the annuity is too low because the pension plan calls for higher payments than the employer claims in setting the annuity. So while the claimed breach of the Severance Agreement turns on determining whether the annuity is enough, it indirectly would involve the interpretation of the pension plan. Here, in contrast, a decisionmaker need not resolve any dispute, directly or indirectly, concerning what the Plan means or how it applies. The only issue raised by the Union's grievance is whether Johnson Controls' unilateral reduction in its matching contribution to the 401(k) plan violates the language of the CBA.

We turn to the final stage of the AT & T Technologies analysis. As that case teaches, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." 475 U.S. at 650 (quoting Warrior & Gulf, 363 U.S. at 584-85).

- 10 -

Johnson Controls has presented no evidence at all to rebut the presumption of arbitrability. Nothing in the record "show[s] the parties <u>intended to exclude</u> this type of dispute" over the meaning of a provision in the CBA "from the scope of the arbitration clause." <u>Grand Wireless, Inc.</u> v. <u>Verizon Wireless, Inc.</u>, 748 F.3d 1, 9 (1st Cir. 2014) (emphasis in original) (citing <u>AT & T Techs.</u>, 475 U.S. at 650); <u>see also</u> <u>Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.</u> v. <u>Trane U.S. Inc.</u>, 946 F.3d 1031, 1035 (8th Cir. 2020); <u>Bressette</u> v. <u>Int'l Talc Co., Inc.</u>, 527 F.2d 211, 216 (2d Cir. 1975).

## III.

<u>Reversed</u>.